**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GLENN MAYER, JR., | ) | Case No. 1:19-cv-2620 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff Glenn Mayer, Jr., a detainee in the Cuyahoga County jail at all relevant times, brought this action alleging that a corrections officer, Defendant Darriell Hayes, used excessive force causing him serious injuries. On re-assignment of this case on December 16, 2020, several motions affecting the course and scope of pretrial proceedings remained pending, including Mr. Hayes's motion to dismiss Claims 3, 4, 5, 6, and 7 of the original complaint (ECF No. 9), which are the counts asserted against him.

In a contemporaneous ruling, the Court resolved the other pending motions, resulting in an amendment that now serves as the operative complaint. (*See* ECF No. 11.) In the interest of judicial economy, the Court treats the fully briefed motion to dismiss the original complaint as a motion to dismiss the amended complaint without the need for further briefing. To the extent Defendants may wish to raise different or additional arguments (beyond those in the pending motion to dismiss) in

seeking to dismiss, they may do so in a motion for judgment on the pleadings under Rule 12(c).

## STATEMENT OF FACTS

Taking the facts alleged in the amended complaint as true and construing them in Plaintiff's favor, as the Court must on a motion to dismiss, Mr. Mayer bases his claims against Mr. Hayes on the following facts.

### A. Background

Mr. Mayer has a condition known as central myoclonus. (ECF No. 11, ¶ 8, PageID #282.) As a result, he suffers from involuntary spasms and muscle twitches, which increase with stress and anxiety. (*Id.*)

In August 2018, Mr. Mayer was booked into the Cuyahoga County jail and assigned to the medical housing unit for people with serious medical conditions. (*Id.*, ¶ 9.) There, others in the unit gave him the nickname "Twitch" because of his condition. (*Id.*) Mr. Mayer received daily medication for his condition. (*Id.*, ¶ 10.) To dispense his medication, a nurse must hold Mr. Mayer's hand because of the tremors and spasms. (*Id.*, ¶ 13, PageID #283.) Plaintiff alleges that a corrections officer named Shaw typically staffed the medical unit and that Mr. Mayer developed a rapport with Shaw and most of the medical staff. (*Id.*, ¶ 10, PageID #282.)

### B. The Attack

On October 16, 2018, Mr. Hayes was substituting for Shaw in the medical unit. (*Id.*, ¶ 11.) Before the events at issue involving Mr. Mayer, Plaintiff alleges that Mr. Hayes prevented someone from stepping out of his cell by yelling, "I don't care

about medical issues. I'm treating this like a regular pod. I'll still put you on the ground." (*Id.*, PageID #283.)

Nurse Heather Johnson arrived at Mr. Mayer's cell to give him his medication. (*Id.*, ¶ 12.) As Johnson placed his medication in Mr. Mayer's hand, "it twitched slightly." (*Id.*, ¶ 14.) She did not react. (*Id.*) According to the amended complaint, Mr. Hayes "grabbed Mr. Mayer from behind by the neck and squeezed hard," triggering an intense muscle spasm, which caused his pills to go flying. (*Id.*)

Plaintiff alleges that Mr. Hayes then escalated matters by slamming his elbow into Mr. Mayer's back while pulling back on his neck with his other hand. (*Id.*) As Mr. Hayes squeezed Mr. Mayer's neck, his spasms continued. (*Id.*) Eventually, Johnson told Mr. Hayes to let Mr. Mayer go and explained his condition. (*Id.*, ¶ 15.) In response, Mr. Hayes allegedly said, "I'm not used to this, I'm used to choking people out when things like this happen," before releasing Mr. Mayer. (*Id.*) Then, Mr. Mayer was able to take his pills. (*Id.*, ¶ 16.)

After he took his pills, Mr. Hayes conducted multiple checks of Mr. Mayer's mouth to ensure he swallowed them. (*Id.*) During these checks, Mr. Mayer "twitched erratically." (*Id.*, PageID #284.) Throughout this encounter, Mr. Mayer was cooperative and compliant. (*Id.*)

### C. The Aftermath

Based on this incident, Mr. Mayer claims that he suffered pain and discomfort. (*Id.*, ¶ 17.) Further, he alleges that his physical condition deteriorated over time, resulting in tingling and occasional loss of mobility, including near-total paralysis at times, and requiring the extended use of a wheelchair. (*Id.*) A month later,

Mr. Mayer had a seizure, and he alleges that he continues to suffer from the attack and requires the assistance of a walker due to loss of muscle control and persistent weakness on his left side. (*Id.*) Since the incident, Mr. Mayer says his twitching has increased. (*Id.*) Although he was disabled before, Plaintiff now maintains that his disabilities are more pronounced and may be permanent. (*Id.*)

Allegedly, Mr. Hayes did not file a report about this incident. (*Id.*, ¶ 27.a., PageID #286.) Plaintiff filed a grievance. (*Id.*, ¶ 19, PageID #284.) Additionally, Mr. Mayer alerted the U.S. Marshal, who interviewed Mr. Hayes, Johnson, and others regarding the events at issue. (*Id.*, ¶ 20, PageID #285.) Two days after the incident, Mr. Hayes allegedly told investigators that he grabbed a man who was "shaking profusely" by the medical cart to prevent him from falling. (*Id.*, ¶ 23.) Mr. Hayes allegedly admitted that Mr. Mayer did nothing wrong. (*Id.*) According to the amended complaint, Mr. Hayes later received notice of the potential for discipline, but none was ultimately imposed. (*Id.*, ¶¶ 27 & 28, PageID #286.)

## STATEMENT OF THE CASE

Against Mr. Hayes, the amended complaint asserts five claims. Claim 3 alleges excessive use of force under 42 U.S.C. § 1983 in violation of the Fourteenth Amendment. (*Id.*, ¶¶ 246–53, PageID #322.) Claim 4 alleges assault. (*Id.*, ¶¶ 254–58, PageID #323.) Claim 5 alleges battery. (*Id.*, ¶¶ 259–263, PageID #323–24.) Count 6 alleges intimidation under Section 2921.03 of the Ohio Revised Code. (*Id.*, ¶¶ 264–69, PageID #324–25.) Count 7 asserts a civil claim for liability for criminal acts under Section 2907.60 of the Ohio Revised Code. (*Id.*, ¶¶ 270–73,

PageID #325–26.) Mr. Mayer seeks compensatory and punitive damages, among other relief. (*Id.*, PageID #329.)

## ANALYSIS

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not. *Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual

5

enhancement.") (cleaned up). Nor does a court accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Against the backdrop of this familiar standard, the Court turns to the arguments Mr. Hayes makes for dismissal of the claims asserted against him. In doing so, the Court need not address his argument directed to the Fourth Amendment because the amendment makes that issue moot.

### I. Qualified Immunity

Based on the facts alleged, Mr. Hayes asserts that he enjoys qualified immunity against Plaintiff's claim under Section 1983 (Claim 3). Qualified immunity protects public officials against lawsuits for civil damages where their conduct does not violate the plaintiff's clearly established constitutional rights. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quotation omitted). "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (cleaned up)). Plaintiff bears the burden of establishing that qualified immunity does not bar suit. *Id.*

In evaluating a claim of qualified immunity, the Sixth Circuit directs that a district court undertake two inquiries, in no particular order. First, a court determines whether the facts alleged make out a violation of a constitutional right.

*Id.* (citing *Martin*, 712 F.3d at 957).  Second, the court asks if the right at issue was clearly established at the time such that a reasonable person would know that his conduct violated that right.  *Id.*  A plaintiff must satisfy each of these steps for his claim to proceed.  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  Under the law of this Circuit, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."  *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015).  Although insubstantial claims should be decided at the earliest stage of litigation possible, that point usually arises at summary judgment.  *Id.* 433–34.

### I.A.   Clearly Established Right

At the time of the events at issue, the Fourteenth Amendment protected the right of a person in pretrial detention to be free from excessive force.  *Hopper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018) (citing *Phelps v. Coy*, 286 F.3d 295, 299–300 (6th Cir. 2002)).  "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  Under precedents such as these, Mr. Hayes's argument that Mr. Mayer did not have a clearly established right under the Fourteenth Amendment to be free from excessive force while detained lacks merit.

### I.B.   Alleged Facts as Excessive Force

A plaintiff can prevail on a claim of excessive force "by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).  This inquiry does not turn on the

7

subjective intent of the officer involved; instead, the standard is objective, examining what a reasonable officer on the scene knew at the time. *Id.* at 397–98. In assessing objective reasonableness, the Supreme Court identified the following additional considerations (a non-exhaustive list): (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id.* at 397. These considerations protect an officer who acts in good faith. *Id.* at 399.

Whether the alleged facts state a plausible claim of excessive force presents a close and difficult call. In the circumstances in which Mr. Hayes found himself on October 16, 2018, a reasonable officer faced with a detainee apparently making a sudden movement while in close contact with a nurse may reasonably perceive such movement as a threat and respond as Mr. Hayes did. This is particularly the case where, as here, the officer had no knowledge of the detainee's condition.

On the other hand, construing the complaint in favor of Plaintiff, as the Court must, two allegations do not allow disposition of the question of qualified immunity at the pleading stage. First, the amended complaint alleges that Mr. Hayes acted with particular force, causing or contributing to the injuries of which Mr. Mayer complains. (*See* ECF No. 11, ¶ 14, PageID #283.) While the parties will ultimately dispute the facts regarding the amount of force applied, the nature of Mr. Mayer's twitching or spasm that prompted the officer's reaction, and how long Mr. Hayes

8

applied force, among other material facts, Plaintiff receives the benefit of the doubt at the pleading stage. Plausibly, the amount of force used, even when responding in good faith to a perceived threat, may cross the line to disproportionality or amount to punishment. Second, according to the amended complaint, Mr. Hayes admitted to investigators after the fact that Mr. Mayer had done nothing wrong. (*Id.*, ¶ 23, PageID #285.) If true, this statement may have various meanings. One may infer from this allegation that Mr. Mayer did nothing to provoke the response, and that Mr. Hayes admittedly used excessive force. Again, however, the procedural posture in which this question arises compels this result.

In making this determination, the Court is mindful both that (1) Plaintiff bears the burden of establishing that Mr. Hayes does not enjoy qualified immunity, and (2) the Sixth Circuit recognizes that a motion for summary judgment generally provides a better opportunity to resolve this question than a motion to dismiss. Because the standard is objective, the Court disregards Plaintiff's allegations relating to the background of Mr. Hayes and other incidents, which may bear on his subjective intent but fall outside the vantagepoint of a reasonable officer under the circumstances.

**II.     State-Law Claims**

As a threshold matter, Mr. Hayes claims statutory immunity under State law against the causes of action Plaintiff asserts under Ohio law. Before considering whether the amended complaints state claims under State law, the Court addresses the statutory immunity defense Mr. Hayes raises.

9

### II.A. Immunity of a Public Employee

Under Section 2744.03 of the Ohio Revised Code, employees of political subdivisions have immunity against claims under State law unless a specific statutory exemption applies. Of relevance here, the second exception to this statutory immunity allows suit where the employee acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Construing the allegations in the amended complaint in Plaintiff's favor, Mr. Mayer pleads facts making it plausible that Mr. Hayes acted with malice or recklessly. At the pleading stage, the allegations permit such an inference, particularly the claim, noted above, that Mr. Hayes later told investigators that Mr. Mayer had done nothing wrong.

### II.B. State-Law Causes of Action

Mr. Hayes also moves to dismiss each of Plaintiff's claims asserted under Ohio law.

#### II.B.1. Assault (Claim 4) and Battery (Claim 5)

Ohio law defines assault as "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Gerber v. Veltri*, 203 F. Supp. 3d 846, 851 (N.D. Ohio 2016) (quoting *Smith v. John Deere Co.*, 83 Ohio App. 3d 398, 406, 614 N.E.2d 1148 (1993)). Battery occurs when a person "acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Id.* (citations omitted). Battery constitutes the actual harmful act or contact. *Smith*, 83 Ohio App. 3d at 406, 614 N.E.2d at 1154. Both torts require intent. *Id.* at 852. For assault, the defendant must intend "to place another in apprehension of a harmful or offensive contact." *Id.* (citations omitted).

10

Intent for battery is more complicated under Ohio law. *See Gerber*, 203 F. Supp. 3d at 852 (discussing single intent and dual intent). Based on the language of the statute, the Court applies the dual-intent standard as better reflecting the statutory design. Under this standard, a defendant must intend to contact the plaintiff and to offend or cause bodily harm. *Id.*

Plaintiff bases his assault claim on a statement Mr. Hayes allegedly made at the outset of the events in the medical unit on October 16, 2018. According to the amended complaint, Mr. Hayes prevented a disabled person from stepping out of his cell, hollering, "I don't care about medical issues. I'm treating this like a regular pod. I'll still put you on the ground." (ECF No. 11, ¶ 11, PageID #283.) Under Ohio law, however, "words alone do not constitute civil assault." *Tekavec v. Sears*, No. 65506, 1994 Ohio App. LEXIS 4489, at *10 (Ct. App. Sep. 29, 1994) (citations omitted). More is required, specifically, a definitive act. *Smith*, 83 Ohio App. 3d at 406, 614 NE.2d at 1154. As a matter of law, Mr. Hayes's statement, made to another person, does not support a claim for assault. Even construing the facts in favor of Plaintiff, Mr. Hayes's statement without more does not amount to an actionable assault, even if it exceeded the bounds of propriety in his work as a correctional officer.

As for the alleged battery, like Plaintiff's Section 1983 claim, the amended complaint presents a close case. On one level, the allegations—even construed in favor of Plaintiff—show Mr. Hayes reacting to what from his perspective appeared to be a threat to Johnson, the nurse. But the allegation of Mr. Hayes's statement to

11

investigators allows a construction of the facts under which the officer intentionally committed a harmful contact knowing that Mr. Mayer did nothing wrong.

Finally, Plaintiff argues that the multiple mouth checks Mr. Hayes performed constitute an assault. (ECF No. 11, ¶ 16, PageID #283.) In the Court's view, following the officer's restraint of Mr. Mayer, the mouth checks may plausibly, if barely, state a claim for assault. Construing the allegations in Plaintiff's favor, in their full context, the officer may have intended to cause fear in Mr. Mayer. On the other hand, Mr. Hayes may merely have been doing his job. In the procedural posture, Plaintiff enjoys the benefit of the doubt. For these reasons, the Court determines that Mr. Mayer states claims for assault and battery.

### II.B.2. Intimidation (Claim 6)

Under Ohio law, an intimidation claim involves the "filing, recording, or otherwise using a materially false or fraudulent writing" in connection with discharging an official's public duties. Ohio Rev. Code § 2921.03(A). Plaintiff argues that Mr. Hayes filed a false report of the incident after initially making no report at all. (ECF No. 11, ¶ 265, PageID #324.) But Plaintiff does not allege that he suffered any injury as a result of the allegedly false report filed. A civil claim for intimidation requires "injury . . . as a result of the commission of the offense." Ohio Rev. Code § 2921.03(C). Without an alleged injury from the allegedly false report, Plaintiff may not maintain this claim.

### II.B.3. Civil Liability for Criminal Acts (Claim 7)

Recently, the Ohio Supreme Court held that Section 2907.60 of the Ohio Revised Code does not require conviction of a crime for a plaintiff to maintain a cause

12

of action. *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 11. In his complaint, Mr. Mayer alleges that Mr. Hayes committed six criminal acts for which he is civilly liable, including felonious assault, unlawful restraint, and dereliction of duty. (ECF No. 11, ¶ 271, PageID #325.) Mr. Hayes argues that Plaintiff's allegations regarding Claim 7 fail to meet the Rule 8 notice pleading standard because Plaintiff fails to plead facts or otherwise explain how or why the allegations amount to criminal acts. Instead, Mr. Hayes maintains, Plaintiff simply lists six different criminal offenses and makes the conclusory allegation that Mr. Hayes has civil liability for these criminal acts. The Court agrees. These are the sorts of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has made clear "do not suffice." *Iqbal*, 556 U.S. at 678. Instead, a plaintiff must plead facts to establish the essential elements of each of its claims. *Twombly*, 550 U.S. at 555. Plaintiff has not done so in Claim 7.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss of Mr. Hayes. Specifically, the Court denies the motion to dismiss Claims 3, 4 (in part), and 5 and grants the motion to dismiss Claims 6 and 7.

**SO ORDERED.**

Dated: January 19, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio